Donald L. Gaffney (#005717)
Lori Lewis (#19285)
Benjamin W. Reeves (#025708)
**SNELL & WILMER L.L.P.**
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-mail: dgaffney@swlaw.com
breeves@swlaw.com
Attorneys for CoBank ACB

David M. Reaves (#011677)
REAVES LAW GROUP
A PROFESSIONAL CORPORATION
2999 North 44th Street, Suite 600
Phoenix, Arizona 85018
Telephone (602) 241-0101
Facsimile (602) 241-0114
E-mail: dreaves@reaves-law.com
Receiver and Proposed Estate Representative

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Proceedings Under Chapter 11 |
| SNOWFLAKE WHITE MOUNTAIN POWER, LLC, | Case No. 2:10-bk-21604-CGC |
| Debtor. | **EMERGENCY STIPULATED MOTION FOR AN INTERIM ORDER APPROVING THE DEBTOR'S USE OF COBANK, ACB'S CASH COLLATERAL** |

**PURSUANT TO LOCAL RULE 4001-4, NOTICE IS HEREBY GIVEN THAT THIS MOTION SEEKS ENTRY OF AN INTERIM ORDER APPROVING CERTAIN USES OF CASH COLLATERAL, INCLUDING 1) AUTHORIZING THE DEBTOR TO USE CASH AND NON-CASH COLLATERAL GENERATED FROM ITS ONGOING OPERATIONS; AND 2) GRANTING OF REPLACEMENT AND CONTINUING LIENS OF THE DEBTOR'S CASH COLLATERAL TO COBANK**

11724395

Pursuant to 11 U.S.C. § 363(c)(2), Rule 4001(d), Federal Rules of Bankruptcy Procedure, and Local Rule 4001-3, Secured Creditor CoBank, ACB ("**CoBank**") and David M. Reaves, the Receiver over Snowflake White Mountain Power, LLC and the proposed representative of the bankruptcy estate (the "**Debtor**" or "**SWMP**"), hereby move this Court for entry of an "Order Approving Interim Use Cash Collateral" ("**Cash Collateral Order**") to, among other things, authorize the Debtor to utilize CoBank's cash collateral on an interim basis. A proposed form of Cash Collateral Order is attached hereto as Exhibit "A". CoBank has a first priority lien on all of the Debtor's cash collateral pursuant to certain "Credit Documents" described in, and attached to "CoBank, ACB's Motion to Excuse Turnover of the Receiver" (DE5) (the "**Motion to Excuse Turnover**") filed on July 9, 2010. In exchange for, among other things, its consent to use of cash collateral pursuant to the terms of this Motion, CoBank has requested, and the Debtor has agreed to grant, a continuing post-petition lien on all post-petition cash collateral generated by the Debtor. This Motion is supported by the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **JURISDICTION**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### **BACKGROUND**

2. In 2006, CoBank agreed to finance (the "**Loan**") the development and operation of a 24 Megawatt biomass-fired power plant located near Snowflake, Arizona (hereinafter referred to as the "**Project**").

3. The Debtor and its affiliates produce green and renewable energy which is sold to Salt River Project Agricultural Improvement and Power District ("**SRP**") and Arizona Power Service ("**APS**").

4. In October 2009, the Debtor defaulted on its Loan with CoBank.

5. After an attempted workout failed, on April 5, 2010, CoBank filed a "Verified Complaint For: (1) Breach of Credit Documents; and (2) Appointment of a Receiver" (the "**Complaint**") in the Superior Court of Arizona, in and for the County of Maricopa as Case No. CV2010-010974 (the "**State Court Action**"), along with a "Verified Application for the Appointment of a Receiver" (the "**Application**") and supporting "Affidavit in Support of Appointment of a Receiver" (the "**Affidavit**").

6. Also on April 5, 2010, the State Court entered that certain "Stipulated Order Appointing Receiver" (the "**Receivership Order**"), and appointed David M. Reaves of the Reaves Law Group, P.C. as the Receiver (the "**Receiver**") over the "Property," as that term is defined in the Receivership Order.

7. On July 9, 2010, (the "**Petition Date**"), the Debtor, by and through the Receiver, filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Arizona (the "**Court**"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code and the Motion to Excuse Turnover, the Receiver is the representative of the Debtor's bankruptcy estate.

8. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

9. Shortly after the Petition was filed, CoBank filed the Motion to Excuse Turnover and expects that several First Day Motions will be filed by the Debtor to address operational matters.

10. CoBank and the Debtor expect to continue operations, through the Receiver, as necessary to protect estate assets and maximize the value of their assets for the benefit of the estate and creditors.

11. As of the Petition Date, the Debtor was jointly and severally indebted to CoBank pursuant to the Credit Documents.

12. As of April 1, 2010, the total amount owed under the Loan was no less than $11,787,266.26, which is made up of $11,257,887.93 in principal, $123,099.18 in interest ($3,517.42 per diem), and $406,279.15 in fees, plus accrued and accruing default interest, late charges, loan fees, trustee's fees, attorneys' fees, and costs (the "**Pre-petition Obligations**").[1]

13. Pursuant to the Credit Documents, the Pre-petition Obligations are secured by valid, enforceable and perfected liens (the "**Pre-petition Liens**"), in certain tangible and intangible assets of the Debtor including, without limitation, a leasehold estate, equipment, inventory and accounts receivable, and the proceeds thereof, identified as (i) the "Collateral" defined in § 2.1 of that certain "Security Agreement" dated as of September 1, 2006 by and between Borrowers and CoBank; (ii) the "Mortgaged Property" defined in that certain "Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing" recorded as Instrument No. 2006-27366 with the Navajo County Recorder on September 8, 2006; and (iii) the Borrowers' assets pursuant to the "UCC Financing Statement" filed with the Arizona Secretary of State as File No. 2006-14430707, the "UCC Financing Statement" filed with the Arizona Secretary of State as File No. 2006-14430694, the "UCC Financing Statement" filed with the Arizona Secretary of State as File No. 2006-14430661 (collectively, the "**Prepetition Collateral**").

14. The Debtor acknowledges and agrees that all cash, cash proceeds, and cash equivalents of the Prepetition Collateral constitute "cash collateral" as that term is defined in 11 U.S.C. §363(a), securing the Prepetition Obligations (the "**Cash Collateral**"). The Receiver needs funds to operate the Debtorss business, and needs to use the Prepetition Collateral and the Cash Collateral for their continued operation. The Debtor is willing to conditionally consent to

---

[1] Additionally, CoBank has issued that certain "Irrevocable Letter of Credit" dated September 7, 2006 in the stated amount of $40,161,891 as security for tax-exempt bonds issued by The Industrial Development Authority of the City of Show Low, Arizona. The Borrowers will ultimately be obligated to pay CoBank if and when the letter of credit is drawn upon. CoBank reserves the right to seek judgment on the amounts that may be, or become, due under the letter of credit at a later date.

11724395

- 4 -

certain uses of its Cash Collateral under the terms and conditions of the Stipulation described below.

15. The Receiver previously used CoBank's Cash Collateral pre-petition, pursuant to the terms of the Receivership Order and other orders entered in the State Court Action. As of the Petition Date, the value of the Pre-petition Collateral is less than the outstanding Pre-petition Obligations. Nevertheless, CoBank is willing to fund the Project with its Cash Collateral on an interim basis on the terms and conditions of this Motion.

16. The Debtor has an immediate need to use the Cash Collateral to minimize the disruption of its business and daily operations, manage and preserve the assets of its bankruptcy estate (as defined under section 541) (collectively, the "**Estate**"), continue works in progress in order to continue the generation of power and, therefore, accounts receivable, which will maximize the value of the Estate's assets and recovery to creditors.

17. The Debtor and CoBank entered into discussions regarding the Debtor's use of Cash Collateral on, at a minimum, an interim basis in order for the Debtor to continue its operations post-petition, subject to the entry of a Cash Collateral Order substantially in the form attached hereto as Exhibit "A." Provided that the Receiver remain in place as the representative of the Estate, CoBank is willing to allow the Debtor to use its Cash Collateral on an interim basis for the continued operation of the Debtor's business. The Debtor's use of the Cash Collateral is necessary, essential and appropriate to prevent immediate and irreparable harm to Debtor and the Estate.

18. Subject to the approval of the Court, the Debtor's use of CoBank's Cash Collateral shall be subject to the same terms and conditions set forth in the Credit Documents, as modified by the Stipulation in this Motion and the Cash Collateral Order.

## **STIPULATION**

19. The Debtor may use the Cash Collateral to pay the designated expenses necessary and essential post-petition operating expenses for the next thirty (30) days ("**July-August 2010**

11724395

**Expenses**") as are set forth in a budget to be mutually agreed upon by the Debtor and CoBank (the "**Budget**"). Debtor is authorized to exceed by ten percent (10%) the amount of any budgeted expense. Debtor may not use CoBank's Cash Collateral for any purpose or amount not set forth in this Stipulation without the prior written consent of CoBank, which consent may be withheld by CoBank in its sole and absolute discretion. CoBank's consent to Debtor's use of the Cash Collateral will immediately terminate upon Debtor's failure to comply with any of the terms and provisions of this Stipulation.

20. Debtor shall take all required steps to ensure that the CoBank Cash Collateral is separately segregated from, and will not be commingled with, any funds or other property that are not subject to the liens of CoBank. Debtor shall continue to separately segregate the CoBank Cash Collateral and all other funds that are not CoBank Cash Collateral shall be placed in a separate debtor-in-possession account.

21. Within twenty (20) calendar days of a Budget month's end, Debtor shall furnish CoBank with: (i) a schedule of the Budget month's actual cash disbursements in the format utilized on the Budget that compares "actual to budgeted" revenues and expenditures; (ii) an accounts payable aging; and (iii) an accounts receivable register.

22. This Stipulation shall not operate as an adjudication of adequate protection or other stay relief rights under 11 U.S.C. §362(d), which may be asserted by CoBank, and shall not constitute a modification of any rights or remedies assertable at law or in equity by CoBank.

23. Any one or more of the following events shall constitute a material default under this Stipulation upon five (5) business days' written notice and opportunity to cure, unless such event or failure is not susceptible of being cured (an "**Event of Default**"), thereby terminating Debtor's conditional right to use CoBank's Cash Collateral:

    (A). Debtor's failure to abide by Paragraph 19 of this Stipulation;

    (B). Debtor's failure to timely provide the financial information as set forth in Paragraph 21 of this Stipulation;

11724395

(C). Debtor's failure to comply with any other term or provision of the Stipulation;

(D). Debtor's filing of a motion seeking to use Cash Collateral other than as provided in this Stipulation, or filing a motion seeking Debtor-in-Possession financing from a party other than CoBank, without the prior written consent of CoBank; or

(E). A Chapter 11 plan is filed in Debtor's case that does not provide for the payment in full of CoBank on the effective date of such plan.

24. Upon the occurrence of an Event of Default, Debtor's right to use Cash Collateral shall terminate and Debtor shall not use any Cash Collateral without having first received an order of the Court. Notwithstanding any language herein to the contrary, Debtor's use of Cash Collateral shall expire hereunder effective thirty days from entry of the interim Cash Collateral Order sought by this Motion; provided, however, that with the written consent of CoBank (which may be withheld in its sole and absolute discretion) this Stipulation may be extended.

25. Notwithstanding anything in Bankruptcy Code § 552 to the contrary, as security for any use, replacement or diminution in the CoBank Collateral or in the allowed secured claim of CoBank as the same existed on the Petition Date, Debtor hereby irrevocably grants to CoBank, a first-priority lien on and security interest in: (a) the CoBank Collateral; (b) all of Debtor's interest in and to all types of personal property, including without limitation the following types of property (as defined in the Arizona UCC), whether owned or existing as of the Petition Date or thereafter acquired, created or arising: (i) accounts; (ii) chattel paper; (iii), deposit accounts; (iv) documents; (v) equipment; (vi) fixtures; (vii) general intangibles, (viii) goods, including accessions and goods with which such goods are commingled; (ix) instruments; (x) inventory; (xi) investment property; (xii) letter-of-credit rights, (xiii) payment intangibles, (xiv) promissory notes; (xv) software; and (xvi) replacements, supporting obligations and proceeds of the foregoing; and (c) any and all proceeds, cash, distributions, checks, negotiable instruments,

insurance proceeds, securities and other cash equivalents now or hereafter received by or on behalf of the Debtor's estate in respect of items listed in (a) and (b) above (collectively, the "**Replacement Liens**"); provided that the Replacement Liens shall exclude the estate's interest in the proceeds from avoidance actions pursuant to Bankruptcy Code §§ 544-54 and 550; provided further that nothing herein or otherwise will preclude CoBank from sharing in the proceeds of these avoidance actions on its allowed claim in this Chapter 11 case.

26. The Replacement Liens will be in the same priority and validity as the pre-petition liens of CoBank. Said Replacement Liens and security interests shall be in addition to all security interests, liens and rights of setoff existing in favor of CoBank as of the Petition Date and shall be senior to all security interests, liens and rights of setoff, except any approved by the Court.

27. Said Replacement Liens and security interests in granted hereby shall be valid, perfected, enforceable and effective against the Debtor and its successors and assigns, including any trustee or receiver in this or any superseding Chapter 7 case, without any further action by the Debtor or CoBank and without the execution, delivery, filing or recordation of any control agreements, promissory notes, financing statements, mortgages, security agreements or other documents. The Debtor authorizes CoBank to file financing statements indicating the scope of their collateral granted hereby. The automatic stay under 11 U.S.C. § 362 is hereby modified to permit CoBank to file this Order or any of the foregoing documents to give notice of such liens and security interests or to enter into agreements with third parties in form and substance satisfactory to CoBank and their counsel.

28. CoBank's authorized representatives and agents will be given prompt access to Borrowers' books, records, dairy herd, documents, equipment, and any other items regarding the operation or financial condition of Borrowers. Such access will be given to CoBank on any business day during normal business hours upon three (3) days' written notice to Debtor's counsel.

11724395

- 8 -

29. It is the express intention of the parties hereto that there are no third party beneficiaries of this Stipulation.

30. The Bankruptcy Court shall retain jurisdiction regarding all matters arising out of, or relating to, this Stipulation.

31. Notwithstanding any term or provision of this Stipulation: (a) no party in interest or other entity shall, pursuant to Bankruptcy Code § 506(c) or other applicable law or principles of equity, be entitled to recover from the CoBank Collateral or other collateral subject to the Replacement Lien: (i) any costs, expenses or fees incurred by the Debtor, his counsel or any other party in interest or other entity in connection with the preservation or disposition of any CoBank Collateral or other collateral subject to the Replacement Lien; and (ii) any expenses of administration of these Chapter 11 cases or any future proceeding or case which may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code; and (b) CoBank does not consent to the incurrence by Debtor, their professionals, or any other person, party, or entity of any of the costs, expenses or fees contemplated under Bankruptcy Code § 506(c), and no consent shall be implied from any action, inaction or acquiescence by CoBank.

32. Debtor acknowledges and agrees that CoBank's participation in this process and in the provisions under this Stipulation is as a secured creditor, not as a co-owner, partner, joint venturer, operator, insider, control entity, employer in fact or in law, or as any other equity participant.

## **RELIEF REQUESTED**

33. By this Motion, CoBank and the Debtor request entry of the Cash Collateral Order, that authorizes the Debtor to utilize CoBank's cash collateral for the next thirty (30) days pursuant to the terms of the Stipulation, and approves the Debtor's granting of a continuing and replacement lien against all cash collateral generated from the Project's activities in the next thirty (30) days.

11724395

## SUPPORT FOR THE RELIEF REQUESTED

34. Section 363(c)(2) provides, generally, that a Debtor may not use, sell or lease cash collateral unless either (i) "each entity that has an interest in such cash collateral consents" or (ii) "the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Here, CoBank, the only secured creditor of the Estate, consents to the Debtor's use of its Cash Collateral as set forth in and subject to the Cash Collateral Order. Furthermore, the interim use of cash collateral contemplated under the Cash Collateral Order is necessary to avoid immediate and irreparable harm to the Debtor's estate. Among other things, the interim use of cash collateral will enable the Debtors to minimize the disruption of its business while protecting and preserving the assets of their estates.

35. Bankruptcy Rule 4001(d) and Local Bankruptcy Rule 4001-2 govern the procedures for obtaining approval of an agreement for the use of cash collateral, and permit a bankruptcy court to authorize the use of cash collateral on an interim basis. Local Bankruptcy Rule 4001-2(a) provides, in pertinent part, that "[w]here the debtor and one or more parties with an interest in the cash collateral have agreed to its immediate use, the court, upon motion, may enter an interim order approving the agreement."

36. The terms and conditions of the interim use of cash collateral pursuant to the Cash Collateral Order are fair and reasonable under the circumstances, and were negotiated by the parties in good faith and at arms' length by and between the parties, with all parties represented by counsel.

## NOTICE

37. Local Bankruptcy Rule 4001-2 does not require prior notice of a Motion for approval of an agreement for use of cash collateral to any party. Rather, Local Bankruptcy Rule 4001-2(b) provides, in pertinent part, as follows:

> (b) Service and Form of Notice. The debtor shall serve notice of the interim order and bar date for objections on parties to the agreement, the United States trustee, and entities entitled to notice

11724395

under Rule 4001(d). The notice shall contain: (1) a detailed description of the terms of the agreement and the interim order, or in lieu of a detailed description, a copy of the agreement and interim order; (2) the date by which objections must be filed and served, which shall be 15 days from the date the notice is served, unless otherwise ordered by the court; and (3) the names and addresses of those persons upon whom objections must be served. The notice shall state that, if no objection is timely filed and served, the court may direct that the interim order shall continue in effect until a specified date or that the interim order shall become the operative order on the use of cash collateral until modified by the court.

38. Accordingly, CoBank and the Debtor will serve copies of this Motion, by E-mail, facsimile (where facsimile numbers were available) and/or by mail, to (i) the United States Trustee, (ii) the twenty (20) largest unsecured creditors (the "20 Largest Unsecured Creditors") identified on Debtor's list filed pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (iii) certain known secured creditors and/or their counsel, and (iv) certain other parties (collectively, the "**Noticed Parties**").

39. Upon entry of the Cash Collateral Order, the Debtor shall serve notice of the Cash Collateral Order pursuant to Local Bankruptcy Rule 4001-2(b), upon the Noticed Parties.

40. Accordingly, notice of the Motion is adequate and proper pursuant to the applicable Bankruptcy Rules.

WHEREFORE, CoBank and the Debtor respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

DATED this 12th day of July, 2010.

SNELL & WILMER L.L.P.


By: s/ Benjamin W. Reeves (025708)
Donald L. Gaffney
Lori Lewis
Benjamin W. Reeves
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202

11724395

- 11 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

| | |
|---|---|
| 1 | REAVES LAW GROUP, P.C. |
| 2 | |
| 3 | By  s/ David M. Reaves (By BWR w/ permission) |
| 4 | David M. Reaves<br>2999 N. 44th Street, Suite 600 |
| 5 | Phoenix, AZ 85018<br>Receiver of the Debtor |

ORIGINAL and ONE COPY filed and
COPY of the foregoing mailed this
12th day of July, 2010, to:

SNOWFLAKE WHITE MOUNTAIN POWER, LLC
c/o CT Corporation System
2394 E. Camelback Rd.
Phoenix, AZ 85016

David M. Reaves
2929 N. 44th St., Ste. 600
Phoenix, AZ 85018
dreaves@reaves-law.com

Carolyn J. Johnsen
Kerry A. Hodges
JENNINGS, STROUSS & SALMON, P.L.C.
One E. Washington St., Ste. 1900
Phoenix, AZ 85004-2385
Facsimile: (602) 495-2977
cjjohnsen@jsslaw.com
khodges@jsslaw.com

J. Matthew Derstine
Roshka, DeWulf & Patten
mderstine@rdp-law.com

Steven B. Richardson
Holme Roberts & Owen LLP
1700 Lincoln St., Ste. 4100
Denver, CO 80203
Steve.Richardson@hro.com

Gerald Shelley
Jimmy F. Dahu
Fennemore Craig
3003 N. Central Ave., Ste. 2600
Phoenix, AZ 85012-2913
GSHELLEY@FCLAW.com
JDAHU@FCLAW.com

11724395

- 12 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

U.S. Trustee
230 N. First Ave.
Phoenix, AZ 85003
USTPRegion14.PX.ECF@USDOJ.GOV

David M. Reaves
REAVES LAW GROUP
2999 N. 44th St., Ste. 600
Phoenix, AZ 85018
Facsimile (602) 241-0114
Receiver
dreaves@reaves-law.com

J. Gregory Lake
Lake & Cobb, PLC
1095 W. Rio Salado Pkwy., Ste. 206
Tempe, AZ 85281
Attorney for J&T Grinding, LLC,
Petitioning Creditor
lake@lakeandcobb.com

Bob Worsley
3418 N. Val Vista Dr.
Mesa, AZ 85213
Fax: 480-556-5500
Manager of Snowflake White Mountain Power, LLC
bworsley@renegy.com
bobnzlegacy@gmail.com

**20 Largest Unsecured Creditors Via
Mail, Facsimile or Overnight Delivery:**

| | |
|---|---|
| Babcock & Wilcox Company<br>20 S. Van Buren Ave.<br>Barberton, OH 44203 | 330-860-9636 facsimile |
| Catalyst Paper (Snowflake), Inc.<br>PO Box 128<br>Snowflake, AZ 85937 | 604-247-0512 facsimile |
| Cervantes-Delgado, Inc.<br>PO Box 9083<br>Brea, CA 92822 | ldc@cervantes-delgado.com<br>awd@cervantes-delgado.com |
| Fastenal Co.<br>PO Box 1286<br>Winona, MN 55987 | 507-453-8049 facsimile |

11724395

| | | |
|---|---|---|
| Fellon-McCord & Associates<br>9960 Corporate Campus Dr., Ste. 2500<br>Louiseville, KY 40223 | info@fellonmccord.com | |
| General Electric International, Inc.<br>PO Box 643449<br>Pittsburgh, PA 15264 | | |
| J&T Grindings, OPS, LLC<br>845 S. 59th Ave.<br>Phoenix, AZ 85043 | | |
| James Cooke & Hobson, Inc.<br>3810 Academy Pkwy S. NE.<br>Albuquerque, NM 87109 | 505-345-1487 facsimile | |
| Mendardi, LLC<br>PO Box 536833<br>Atlanta, GA 30353 | | |
| Nalco Company<br>PO Box 730005<br>Dallas, TX 75373 | 630-305-2900 facsimile | |
| Praxair Distributing Inc.<br>PO Box 120812<br>Dept. 0812<br>Dallas, TX 75312 | 800-772-9985 facsimile | |
| Process Equipment<br>PO Box 1607<br>Pelham, AL 35124 | 205-663-6037 facsimile | |
| Rio Puerco Construction Inc.<br>PO Box 637<br>Holbrook, AZ 86025 | | |
| Road Machinery<br>716 S. 7th St.<br>Phoenix, AZ 85034 | 602.253.9690 facsimile | |
| Squire Sanders & Dempsey LLC<br>PO Box 643051<br>Cincinnati, OH 45264 | 513-361-1201 facsimile | |
| Sun Machinery Co.<br>PO Box 789<br>Lexington, SC 29071 | 803-359-4351 facsimile | |
| Thornton Farish, Inc.<br>3500 Eastern Blvd., Ste. 210<br>Montgomery, AL 36116 | | |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11724395

| | | |
|---|---|---|
| URS Corporation<br>PO Box 116183<br>Atlanta, GA 30368 | | 678-808-8400 facsimile |
| US Premium Finance<br>PO Box 924647<br>Norcross, GA 30010 | | 678-969-0399 facsimile |

s/Karen Schweller

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11724395

# EXHIBIT A

Donald L. Gaffney (#005717)
Lori A. Lewis (#019285)
Benjamin W. Reeves (#025708)
**SNELL & WILMER L.L.P.**
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-mail: dgaffney@swlaw.com
breeves@swlaw.com
Attorneys for CoBank ACB

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>SNOWFLAKE WHITE MOUNTAIN POWER, LLC,<br><br>Debtor. | Proceedings Under Chapter 11<br><br>Case No. 2:10-bk-21604-CGC<br><br>**ORDER APPROVING INTERIM USE OF CASH COLLATERAL**<br><br>**Date:**<br>**Time:**<br>**Location:**<br><br>**Related DE(s):** |

This matter came before the Court pursuant to the *Emergency Stipulated Motion for Interim Order Authorizing the Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363* ("**Cash Collateral Motion**") [Docket No. 13] filed on July 12, 2010, by Secured Creditor CoBank, ACB ("**CoBank**") and the David M. Reaves, Receiver over Snowflake White Mountain Power, LLC and the proposed representative of the bankruptcy estate (collectively, the "**Debtor**" or "**SWMP**").

Through the Cash Collateral Motion and pursuant to Bankruptcy Code § 363, Rule 4001(d), Federal Rules of Bankruptcy Procedure, and Local Rule 4001-3, CoBank and the Debtor (collectively, the "**Moving Parties**") seek an interim order ("**Interim Order**"): (a) authorizing the Debtor to pay necessary and essential post-petition operating expenses for the next thirty (30) days ("**July-August 2010 Expenses**"), with certain cash and cash equivalents ("**Cash**") pursuant to a budget that is attached hereto as **Exhibit 1** (the

11728589

"**Budget**"); and (b) authorizing a continuing and post-petition lien in all of the Debtor's post-petition receivables. In exchange for, among other things, CoBank's consent to the use of its cash collateral, the Debtor grants replacement liens on and security interests in all existing and hereafter acquired property and assets of the Debtor of every kind and character, to the extent (if any) and in the same validity, priority, and enforceability that CoBank held a non-avoidable lien and security interest in such kind and character of property and assets of the Debtor, as of the commencement of the above captioned Chapter 11 case.

The Cash Collateral Motion was noticed to the United States Trustee, the twenty (20) largest unsecured creditors in the case, and all other parties that have appeared in this case. Based on the Cash Collateral Motion, the Court finds and concludes as follows:

A. The Cash Collateral Motion presents a "core" proceeding over which the Court has jurisdiction to grant relief pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), and (O); 11 U.S.C. § 105 and 363; and Bankruptcy Rule 4001.

B. The limited use of the Cash to pay the July-August 2010 Expenses, as described in the Budget is necessary and essential to preserve on a going concern basis the assets of the Debtor and its bankruptcy estate.

C. Based on all germane matters of record in this case, the Court finds that good cause presently exists to grant the Cash Collateral Motion on an interim basis. Accordingly,

**IT IS HEREBY ORDERED** as follows:

1. The Cash Collateral Motion shall be and hereby is granted on an interim basis in its entirety.

2. The Debtor is authorized to use the Cash to pay ordinary, necessary, and essential post-petition operating expenses for the thirty (30) days following entry of this Interim Order, according to the terms of the attached Budget, and pursuant to the Stipulation of CoBank and the Debtor in ¶¶ 19-32 of the Cash Collateral Motion (the "**Stipulation**").

11728589

3. The terms and conditions of the Stipulation are approved, ratified, and granted in their entirety.

4. The Debtor's authorization to use the Cash in accordance with the terms of this Interim Order will remain in effect through August 13, 2010 or pending further order from this Court.

5. The Debtor's grant of the Replacement Liens, as that term is defined in ¶ 25 of the Cash Collateral Motion, on and security interests in all existing and hereafter acquired property and assets of the Debtor of every kind and character, to the extent (if any) and in the same validity, priority, and enforceability that CoBank held a non-avoidable lien on and security interest in such kind and character of property and assets of the Debtor, as of the commencement of its Chapter 11 case is hereby approved, ratified, and granted in its entirety.

6. Nothing in this Interim Order shall constitute a determination of the validity, priority, or extent of the claim of CoBank. Likewise, nothing in this Interim Order shall constitute a determination of the validity, priority, or extent of any lien or security interest claimed by CoBank against the property or assets of the Debtor or the Debtor's estate. Nothing in this Order constitutes a finding that the interests of CoBank in the Debtor's case are adequately protected.

7. The Debtor and/or CoBank shall serve a copy of this Order on: United States Trustee, the twenty (20) largest unsecured creditors in the case, all other parties that have appeared in this case, and counsel for any statutory committee appointed in the case.

**DATED AND SIGNED ABOVE.**

11728589

- 3 -