# EWING BEMISS & CO.
### INVESTMENT BANKERS

April 28, 2010

Mr. David M. Reaves
Receiver
Snowflake White Mountain Power, LLC
3418 N. Val Vista Drive
Mesa, AZ 85213

Dear Mr. Reaves:

We would be pleased to act as the exclusive financial advisor to David M. Reaves of The Reaves Law Group, P.C. (the "Receiver"), solely in his capacity as the court-appointed receiver pursuant to the "Stipulated Order Appointing Receiver" (the "Order") entered in Case No. CV2010-010974 in the Superior Court of Arizona, in and for the County of Maricopa (the "Court") over the "Property" (as defined in the Order) owned by Snowflake White Mountain Power, LLC ("Snowflake"), Renegy, LLC ("Renegy") and Renegy Trucking, LLC ("Renegy Trucking") in connection with its proposed sale of the Snowflake White Mountain Biomass Project (the "Project"), (collectively the "Transaction"). This letter sets forth the terms of a financial advisory agreement between the Receiver and Ewing Bemiss & Co. ("EB&Co."). The Receiver covenants that EB&Co. shall have the exclusive right to sell the Project during the term of this Agreement.

**Services**

We will work closely with the Receiver and the Project's management and provide a variety of financial advisory services. In that connection, we will:

- Prepare a detailed descriptive package that includes a summary of the history and prospects for the Project ("Memorandum") as well as other materials requested by potential buyers;
- Identify prospective buyers and prepare a list of such buyers for the Transaction;
- Solicit and evaluate proposals from potential buyers approved by the Receiver,
- Assist the Receiver in structuring and negotiating a definitive agreement for the sale;
- Proactively assist the Receiver in connection with the due diligence process; and
- Provide such other advisory services as are necessary and appropriate to expedite the closing of the Transaction.

At all times during the engagement, the Receiver (subject to Court approval) shall have the authority to approve and restrict the distribution of information, to approve names of all parties with which EB&Co. has contact, to approve terms of any proposed Transaction, to refuse to pursue discussions or to negotiate with any party for any reason, and to terminate discussions or negotiations at any time. EB&Co. shall have no authority to make commitments on behalf of the Receiver or any of the Receivership Estate (as hereafter defined).



**Compensation**

As compensation for the services described above, subject to Court approval, the Receiver shall pay, out of the totality of the Property, accounts, assets, rights, and obligations that the Receiver has authority to manage and control in accordance with the Order ("Receivership Estate"), to EB&Co. a retainer fee of $10,000 per month, payable monthly in advance. Subject to Court approval, if the Project, or any portion thereof, is sold during the term of this Agreement, the Receiver will pay to EB&Co. at the closing of the Transaction, a fee according to the following schedule (the "Success Fee"):

| Consideration Received: | $ or Percentage Fee: |
|---|---|
| Under $20 million | $400,000 |
| $20 to $25 million | 2% |
| $25 to $30 million | 2% |
| $30 to $35 million | 1.9% |
| $35 to $40 million | 1.8% |
| $40 to $45 million | 1.6% |
| $45 to $50 million | 1.5% |
| $50 million | 1.5% |

Consideration shall mean the sum of the following items paid, issued or entered into by the acquirer as consideration, including:

- cash received by the Receiver or anyone else;
- the fair market value of all equity securities or interests received by the Receiver or its subsidiaries;
- the present value of any royalty or other compensation stream received or to be received by the Receiver or anyone else as part of the Transaction;
- the present value of any straight or convertible debt instruments issued or issuable to the Receiver or anyone else in connection with the Transaction; and
- the principal amount of any indebtedness of the Receiver or anyone else assumed by the acquiror in connection with the Transaction.

The cumulative amount of retainer payments by the Receiver to EB&Co. will be credited against the Success Fee at closing, subject to a maximum credit equal to six months of retainer payments. Notwithstanding the foregoing, if CoBank, ACB ("CoBank") acquires the Project with a credit bid at a foreclosure sale, EB&Co. shall not receive any compensation or Success Fee above and beyond the amounts already paid (or due) by the Receiver to EB&Co. as of the date of the foreclosure sale.



## Expenses

Subject to Court approval, the Receiver will reimburse EB&Co. on a monthly basis for all reasonable and documented out-of-pocket expenses at actual cost incurred in connection with the provision of the services described above, which will include travel and other out of pocket expenses.

## Tombstone

Following the conclusion of the Transaction, EB&Co. shall have the right, after review and consent of the Receiver, to place a tombstone advertisement in the financial and other press at its expense describing its services hereunder.

## Indemnification

The Receiver will indemnify EB&Co. as set forth in Rider A hereto.

## Term of Engagement

This engagement and this letter are subject to Court approval, and may be terminated by the Court at any time, or upon 14 days written notice by either the Receiver or EB&Co., and in any event will terminate six months from the date hereof or upon termination of the Receivership. If, within twelve months following the termination of this agreement, the Receiver consummates a sale of the Project with a party contacted by EB&Co. on behalf of the Receiver with the Receiver's prior consent, the Receiver will (subject to Court approval), at the closing of such transaction, pay to EB&Co. the full compensation due under the terms of this agreement. This agreement is to be governed by the laws of the state of Arizona, regardless of any conflicts of law principles. Any dispute arising out of this agreement shall entitle the successful party to recover its attorneys' fees and costs, and shall be brought in the Action. This agreement shall not become binding on the Receiver until approved by the Court.

## Limitation of Receiver's Liability

Notwithstanding any contrary provisions hereof, the Receiver's obligations hereunder shall be paid or satisfied solely out of the Receivership Estate, and they shall not constitute the personal obligations of the Receiver.



**Bankruptcy**

If Snowflake files for bankruptcy (or is involuntarily placed into bankruptcy), EB&Co. shall not receive any compensation above and beyond the amounts already paid by the Receiver to EB&Co. as of the date the bankruptcy is filed.

If this agreement correctly states our understanding, please sign both copies and return one to me. We look forward to working with you.

*Mary A. Bacon*

Mary Adams Bacon
Managing Director


Agreed and accepted to by:

Snowflake White Mountain Power Company, L.L.C., by and through **DAVID M. REAVES** solely in his capacity as Receiver

By: _____, receiver

Name: David M. Reaves

Title: Receiver


11419369



# RIDER A

The Receiver hereby agrees, subject to Court approval, to indemnify and hold harmless EB&Co. and its officers, directors, employees and agents (the "Indemnified Parties") from any and all losses, judgments, penalties, fines, costs, damages or liabilities of any kind or nature, whether joint or several ("Losses"), arising from any suits, actions, proceedings or claims brought or made by a third party or governmental or regulatory authority (including, without limitation, any reasonable legal or any other expenses as they are incurred by an Indemnified Party in connection with the preparation or defense of any such action, claim or proceeding, whether or not resulting in any liability), to which such Indemnified Party may become subject or liable or which may be incurred by or assessed against any Indemnified Party under any statute, common law, contract, or otherwise, relating to or arising out of any (a) intentional or grossly negligent actions or omissions of the Receiver or its officers, directors or employees; (b) any untrue statement of material fact made in the Memorandum or any omission to state a material fact necessary in order to make the statements made in the Memorandum, in light of the circumstances under which they were made, not misleading, to the extent such statements were based on information supplied in writing by the Receiver; or (c) breach by the Receiver of the definitive agreement for the Transaction; provided, however, that the Receiver shall not be liable to an Indemnified Party in any such case to the extent that any Losses result from such Indemnified Party's bad faith, willful misconduct or negligent actions or omissions.

Promptly after receipt by an Indemnified Party of any claim or the commencement of any action or proceeding in respect of which indemnity may be sought from the Receiver, such Indemnified party will notify the Receiver in writing, and the Receiver shall immediately assume full defense thereof. Notwithstanding the preceding sentence, the Indemnified Party will be entitled to employ its own counsel if the Indemnified Party is advised in a written opinion of counsel that a conflict of interest exists which makes representation by counsel chosen by the Receiver inadvisable.

If for any reason (other than as specifically provided herein) the foregoing indemnity for an indemnified claim is unavailable to an Indemnified Party or is insufficient to fully hold any Indemnified Party harmless, then the Receiver shall contribute to the amount paid or payable by such Indemnified Party as a result of such claim in such proportion as is appropriate to reflect the relative benefits received by, and the fault of, the Receiver on the one hand, and of the Indemnified Party on the other hand, as well as any relevant equitable considerations.

The parties hereto further agree that the relative fault of the Receiver on the one hand and the Indemnified Party on the other hand with respect to the Transaction shall be determined by



reference to, among other things, whether any untrue or alleged untrue statement of a material fact or incorrect opinion or conclusion, or the omission or alleged omission to state a material fact is related to information supplied by the Receiver on the one hand or by the Indemnified Party on the other hand, as well as the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement, opinion, conclusion or omission.

The indemnity, contribution and expense reimbursement agreements and obligations set forth herein shall be in addition to any other rights, remedies, or indemnification which any Indemnified Party may have or be entitled to at common law or otherwise, and shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Party.

The Receiver hereby agrees that it will not settle any indemnified claim without the prior consent of EB&Co. or any Indemnified Party involved therein if such settlement involves any admission of wrongdoing, negligence or improper activity of any kind by EB&Co. or such Indemnified Party. The Receiver shall not, without the prior written consent of an Indemnified Party, effect any settlement of any pending or threatened action, suit or proceeding in respect of which such Indemnified Party is a party and indemnity could have been sought hereunder by such Indemnified Party, unless such settlement includes an unconditional release of such Indemnified Party from all liability with respect to claims that are the subject matter of such action, suit or proceeding. Notwithstanding any contrary provisions hereof, the Receiver's obligations hereunder shall be paid or satisfied solely out of the Receivership Estate, and they shall not constitute the personal obligations of the Receiver.