**REAVES LAW GROUP**
A PROFESSIONAL CORPORATION
2999 North 44th Street, Suite 600
Phoenix, Arizona 85018
Telephone (602) 241-0101
Facsimile (602) 241-0114

David M. Reaves, Receiver
State Bar No. 011677

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>SNOWFLAKE WHITE MOUNTAIN POWER, LLC,<br><br>Debtor. | Proceedings Under Chapter 11<br><br>Case No. 2:10-bk-21604-CGC<br><br>RECEIVER'S MOTION FOR AUTHORITY TO SELL SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AS A GOING CONCERN AND TO ASSUME AND ASSIGN OR REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO<br><br>Date: not yet set<br>Time:<br>Location: 230 N. First Ave.<br> 6th Floor, Courtroom 601<br> Phoenix, AZ 8500 |

David M. Reaves, in his capacity as Receiver (the "**Receiver**") and authorized representative of Snowflake White Mountain Power, LLC (the "**Debtor**" or the "**Company**") files this "Receiver's Motion For Authority To Sell Substantially All Of The Debtor's Assets As A Going Concern And To Assume And Assign or Reject Certain Executory Contracts And Unexpired Leases Related Thereto" (the "**Sale Motion**")[1] seeking entry of an Order authorizing

---
[1] Capitalized terms not defined herein shall have meanings ascribed to them in the Agreement.

(i) the sale of substantially all of the Debtor's assets, as more fully described herein (the "**Purchased Assets**"), free and clear of Interests and Claims (the "**Sale**"); and (ii) the assumption and assignment or rejection, as applicable, of certain executory contracts and unexpired leases, including all Permits relating to the Business to the extent transferable, (the "**Purchased Contracts**") to Snowflake Power, LLC or its designee or designees (the "**Purchaser**"), subject to better and higher offers, on the terms and conditions provided herein. In support thereof, the Receiver shows as follows:

## I. <u>JURISDICTION</u>

1. This Court has core subject matter jurisdiction to hear and resolve the Sale Motion pursuant to 28 U.S.C. §§ 1334(b), 1334(e), 157(b)(2)(A), 157(b)(2)(M), 157(b)(2)(N), 157(b)(2)(O) and applicable local rules and General Orders regarding the referral to this Court of cases under title 11 of the United States Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. <u>BACKGROUND</u>

2. The Debtor operates a 24-megawatt (nameplate) biomass-fired power plant (the "**Plant**") located in Snowflake, Arizona (the "**Business**") on real property leased from Catalyst Paper (Snowflake) Inc. (the "**Real Property**").

3. On April 5, 2010, CoBank, ACB ("**CoBank**"), a secured creditor of the Company, filed suit against the Company and certain other parties in the Superior Court of the State of Arizona (the "**Receivership Court**"), in case number CV2010-010974, which suit (the "**Receivership Case**") included an application for the appointment of the Receiver as receiver over certain assets of the Company (as further defined in the Receivership Order, the "**Property**"), and pursuant to which a Stipulated Order Appointing Receiver ("**Receivership Order**") was entered by the Receivership Court on April 7, 2010.

4. CoBank holds a valid and existing first priority lien on the Purchased Assets in an amount that exceeds the Sale Price, as defined below.

5. On July 9, 2010, the Receiver and CoBank filed an "Application for Temporary Restraining Order Against Salt River Project Agricultural Improvement and Power District or in the alternative For Authority of the Receiver to File a Voluntary Petition for Chapter 11 Bankruptcy for Snowflake White Mountain Power, LLC" (the "**Application**") in the Receivership Case.

6. On July 9, 2010, the Receivership Court entered an "Order Authorizing the Receiver to File a Chapter 11 Petition on Behalf of Snowflake White Mountain Power, LLC" (the "**State Court Order**"), which denied the application for a temporary restraining order, but granted the Receiver authority to file a bankruptcy petition for the Debtor.

7. On July 9, 2010, the Receiver filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States District Court, District of Arizona (the "**Bankruptcy Court**") on behalf of Snowflake White Mountain Power, LLC, commencing Bankruptcy Case No. 2:10-21694-CGC (the "**Bankruptcy Case**").

8. On July 13, 2010, the Bankruptcy Court granted "CoBank's Motion to Excuse Turnover of the Receiver" on an interim basis ("**Excuse Order**"), authorizing the Receiver to continue to operate, possess, and control the Purchased Assets pending further order of the Bankruptcy Court.

9. Pursuant to the Receivership Order and the Excuse Order, the Receiver is authorized to sell or otherwise dispose of the Property.

10. Pursuant to the Excuse Order, the Receiver manages the affairs of the Debtor's estate and exercises all of the rights and powers of a trustee serving in a case under chapter 11 of the Bankruptcy Code in accordance with 11 U.S.C. § 1107. Among those rights and powers are (i) the right and power to sell property of the Debtor's estate out of the ordinary course of business, free and clear of liens and interests; and (ii) the right and power to assume and assign or reject unexpired leases and executory contracts, subject to approval by this Court after appropriate notice and an opportunity for a hearing. *See* 11 U.S.C. §§ 363(b), 363(f), 365(a),

365(f) and 1107.

11. The Receiver has engaged Ewing Bemis & Co. Investment Bankers ("**EB&Co**") as a broker to continue to market the Property. The engagement of EB&Co was approved by the Court by order entered on August 9, 2010. Prior to the Petition Date, EB&Co had undertaken significant effort to market the Plant and the Business, including the compilation of an offering book, solicitation of initial bids, and assisting potential purchasers in completing their due diligence, among other things. EB&Co has continued these efforts after its engagement by the Receiver in this Bankruptcy Case.

12. After initial negotiation by EB&Co with several parties, the Receiver entered into that certain Asset Purchase Agreement dated as of September 8, 2010 (the "**Agreement**") with the Purchaser to sell the Purchased Assets[2] for $4,750,000 (the "**Sale Price**"). The Agreement is attached hereto as Exhibit "1" (the "**Agreement**").

13. The Purchased Assets include the following, without limitation:

(a) all deposits, prepayments, refunds, or pre-paid costs, fees, premiums and expenses;

(b) all tangible personal property used in the Business and located at the Real Property;

(c) the rights to and in the telephone numbers, internet web sites and internet domain names presently used by the Company in the Business and all software and software licenses used solely in the Business to the extent transferable;

(d) all financial and business records, including customer lists and files and data and databases (whether in print, electronic, or other format) primarily relating to the Business and personnel records of Transferred Employees, to the extent not included among the Excluded Assets;

(e) the Purchased Contracts (all contracts listed on Schedule 2.1(a)(v) to the Agreement), subject to change as set forth in paragraph 2.1(a)(v) of the Agreement;

---

[2] The Purchased Assets constitute substantially all of the assets of the Debtor, and are part of the Property. The remainder of the Property under the control of the Receiver is owned by non-Debtor entities, and remains under the control of the Receivership Court.

(f) all fuel inventory and spare parts;

(g) all patents, patent applications, patent rights, trademarks, trademark applications, trade names, product names, service marks, copyrights, copyright applications domain name registration, know-how and other intellectual property related to the Business;

(h) all goodwill with respect to the Purchased Assets and the Business;

(i) all insurance benefits (including rights and proceeds thereof) (A) to the extent primarily relating to any damage to or destruction or other loss of any of the Purchased Assets or the Business, in any such case occurring from and between the Effective Date and the date (the "**Closing Date**") of the consummation of the Sale (the "**Closing**"), whether received or receivable by or on behalf of the Company on or after the Effective Date, unless expended on repairing or replacing any such Purchased Asset before the Closing Date, and (B) paid or payable under the Company Insurance Policies;

(j) all claims of the Company against any Person primarily relating to the Purchased Assets or the Business;

(k) all Permits relating to the Business to the extent transferable (the "**Purchased Permits**");

(l) all cash, cash equivalents and uncashed checks in favor of the Company received prior to the Closing Date; and

(m) all Accounts Receivable outstanding as of the Closing and any other Current Assets not expressly set forth above.

### III. RELIEF REQUESTED

14. By this Motion, the Receiver requests authorization to (i) sell the Purchased Assets and the Purchased Contracts free and clear of all liens, claims, mortgages, pledges, security interests, charges, rights of setoff debts, obligations, restrictions, encumbrances, and other interests, except for the Assumed Liabilities, as defined in the Agreement, and including, but not limited to: (i) all liens, claims, security interests, and encumbrances of any kind or character; (ii) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or the Purchaser's interest in the Purchased Assets, or any similar rights; and (iii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the date Closing Date, pursuant to

§§105 and 363 of the Bankruptcy Code and Rules 2002(a)(2), 6004, 9006 and 9014, Fed. R. Bankr. P. and to (ii) assume and assign the Purchased Contracts to Purchaser pursuant to Bankruptcy Code section 365 and Rule 6006.

15. The Receiver further requests that the Court approve the sale of such assets to Purchaser pursuant to the terms of the Agreement, subject to any higher and better offers for such assets that may be obtained in accordance with the sales procedures approved by the Court. There has been no appraisal of the Purchased Assets prepared by the Receiver.

16. The Receiver also requests authorization to pay CoBank through escrow the entire net proceeds of the Sale after deducting reasonable expenses and closing costs.

### IV. SUPPORT FOR RELIEF REQUESTED

**A. Sale of Assets**

17. Section 363(b)(1) of the Bankruptcy Code provides that a trustee or debtor-in-possession, after notice and a hearing, "may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Courts have uniformly held that approval of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds the transaction represents a reasonable business judgment on the part of the debtor in possession or trustee. *See, e.g. Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986).

18. The proposed sale of the Purchased Assets to Purchaser under the terms of the Agreement reflects the reasonable business judgment of the Receiver. The provisions contained in the Agreement are the result of good faith, arms-length bargaining by parties represented by experienced counsel. The Receiver believes the proposed purchase price for the Purchased Assets is fair, reasonable and represents the highest and best offer that could be obtained for such assets. Moreover, in order to ensure that the Purchased Assets yield the highest and best price,

the Receiver will provide notice of the terms of the proposed sale and permit other potential purchasers to bid on the assets pursuant to the notice and sale procedures approved by the Court.

19. Section 363(f) of the Bankruptcy Code permits the sale of a debtor's assets "free and clear of any interest" in such assets if one or more condition specified in that section is satisfied. 11 U.S.C. §363(b)(1) and §363(f). In particular, section 363(f) permits the sale of assets free and clear if all entities holding an interest in the property consent to the sale. 11 U.S.C. §363(f)(2). In the instant case, CoBank (the "**Lender**") is the only entity known to the Receiver to assert an interest in Purchased Assets and Purchased Contracts. The Lender indicated to the Receiver that it consents to the sale of the Purchased Assets and Purchased Contracts pursuant to the terms of the Agreement since the Lender will be paid from the proceeds from the sale. If any other entity asserts a bona fide interest in the Purchased Assets, the Receiver will seek to obtain the consent of any such entity or otherwise satisfy the elements of Section 363 of the Bankruptcy Code.

20. It is the Receiver's best business judgment that there are sound business justifications for the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside the context of, a plan of reorganization in that, among other things, the fact that there are insufficient funds to permit the Business to continue to operate for any length of time makes the proposed Sale the best available outcome for the Debtor, the Debtor's estate and its creditors.

**B.** **Good Faith**

21. The proposed sale of the Purchased Assets and Purchased Contracts to Purchaser is the product of arms length negotiation between the parties. There is no connection between the Purchaser, or any of its officers and directors, and Debtor, or any of its officers or directors. No fraud, collusion or improper relationship exists between the parties. Accordingly, the order approving the sale to Purchaser should expressly state that Purchaser is a good faith purchaser entitled to the protections afforded under section 363(m) of the Bankruptcy Code.

**C. Assignment of Contracts**

22. Bankruptcy Code §365(a) authorizes the assumption of executory contracts or unexpired leases subject to the provisions of §365(b), (c) and (d). See 11 U.S.C. §365(a). The Receiver seeks assumption and assignment to Purchaser or the successful bidder of the Purchased Contracts.

23. A debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule," and will not be subject to review unless such a decision is clearly an unreasonable exercise of judgment. *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 318 U.S. 523, 63 S.Ct. 727, 87, L.Ed. 959 (1943)(rejecting the test of whether the executory contract was burdensome in favor of whether rejection is within the debtor's business judgment); *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1046-7 (4th Cir. 1985); *In re Minges*, 602 F.2d, 38, 41 (2nd Cir. 1979).

24. A debtor's business judgment decision to assume or reject an executory contract is not subject to review unless such a decision is clearly an unreasonable exercise of judgment. *Lubrizol Enterprises*, supra, 756 F.2d at 1047 (the business judgment rule "requires that the decision be accepted by the courts unless it is shown that the debtor's decision was on taken in bad faith or in gross abuse of the debtor's retained business discretion"). The issue is whether the debtor's decision that assumption will benefit the estate "is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Id*.

25. 11 U.S.C. § 365(f) provides that the trustee may assign an executory contract where adequate assurance of future performance by the assignee of such contract or lease is provided.

26. Assumption and assignment of the Purchased Contracts are in the best interest of the Debtor and its estate because such assumption and assignment is an integral part of the asset sale which will generate substantial cash that can be distributed to creditors. Assumption and

assignment of the Purchased Contracts will also relieve the Debtor from any further liability under the Purchased Contracts pursuant to 11 U.S.C.§ 365(k).

27. Although the Receiver believes that the bidding procedures employed for the sale are sufficient to establish "adequate assurance" of future performance, the Receiver or Purchaser (or any successful bidder) will, in their sole discretion provide any non-debtor party to a Purchased Contract information reasonably necessary to establish such entities' ability to perform under the terms of such contract.

### V. NOTICE

28. The Receiver has provided notice of the Motion to (1) United States Trustee; (2) the Official Service List maintained in this case; (3) all parties who had previously expressed an interest in the assets comprising the business; (4) all parties who hold a lien of record in and to the Purchased Assets; and (5) all non-debtor parties to the Purchased Contracts.

**WHEREFORE** the Receiver respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

DATED this 10th day of September, 2010.

REAVES LAW GROUP

By:/s/ David M. Reaves-011677
David M. Reaves
2999 North 44th Street, Suite 600
Phoenix, Arizona 85018
Receiver

COPY of the foregoing mailed or e-mailed this 10th day of September, 2010, to:

SNOWFLAKE WHITE MOUNTAIN POWER, LLC
c/o CT Corporation System
2394 E. Camelback Rd.
Phoenix, AZ 85016

| | |
|---|---|
| Donald L. Gaffney | dgaffney@swlaw.com |
| Lori A. Lewis | llewis@swlaw.com |
| Benjamin W. Reeves | breeves@swlaw.com |

SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Attorneys for CoBank, ACB

| | |
|---|---|
| Carolyn J. Johnsen | cjjohnsen@jsslaw.com |
| Kerry A. Hodges | khodges@jsslaw.com |

JENNINGS, STROUSS & SALMON, P.L.C.
One E. Washington St., Ste. 1900
Phoenix, AZ 85004-2385

J. Matthew Derstine    mderstine@rdp-law.com
Roshka, DeWulf & Patten
One Arizona Center
400 E. Van Buren, Ste. 800
Phoenix, AZ 85004-2262

Steven B. Richardson    Steve.Richardson@hro.com
Holme Roberts & Owen LLP
1700 Lincoln St., Ste. 4100
Denver, CO 80203

| | |
|---|---|
| Gerald Shelley | gshelley@fclaw.com |
| Jimmy F. Dahu | jdahu@fclaw.com |

Fennemore Craig
3003 N. Central Ave., Ste. 2600
Phoenix, AZ 85012-2913

U.S. Trustee    ustpregion14.px.ecf@usdoj.gov
230 N. First Ave.
Phoenix, AZ 85003

| | | |
|---|---|---|
| 1 | J. Gregory Lake<br>Lake & Cobb, PLC | lake@lakeandcobb.com |
| 2 | 1095 W. Rio Salado Pkwy., Ste. 206<br>Tempe, AZ 85281 | |
| 3 | Attorney for J&T Grinding, LLC,<br>Petitioning Creditor | |

Renegy Holdings, Inc.  bworsley@renegy.com
3418 N. Val Vista Dr.  bobnzlegacy@gmail.com
Mesa, AZ 85213
Fax: 480-556-5500

**20 Largest Unsecured Creditors Via U.S. Mail:**

Babcock & Wilcox Company
20 S. Van Buren Ave.
Barberton, OH 44203

Catalyst Paper (Snowflake), Inc.
PO Box 128
Snowflake, AZ 85937

Cervantes-Delgado, Inc.
PO Box 9083
Brea, CA 92822

Fastenal Co.
PO Box 1286
Winona, MN 55987

Fellon-McCord & Associates
9960 Corporate Campus Dr., Ste. 2500
Louisville, KY 40223

General Electric International, Inc.
PO Box 643449
Pittsburgh, PA 15264

J&T Grindings, OPS, LLC
845 S. 59th Ave.
Phoenix, AZ 85043

James Cooke & Hobson, Inc.
3810 Academy Pkwy S. NE.
Albuquerque, NM 87109

Mendardi, LLC
PO Box 536833
Atlanta, GA 30353

| | |
|---|---|
| 1 | Nalco Company<br>PO Box 730005 |
| 2 | Dallas, TX  75373 |
| 3 | Praxair Distributing Inc.<br>PO Box 120812 |
| 4 | Dept. 0812<br>Dallas, TX  75312 |
| 5 | |
| 6 | Process Equipment<br>PO Box 1607<br>Pelham, AL  35124 |
| 7 | |
| 8 | Rio Puerco Construction Inc.<br>PO Box 637<br>Holbrook, AZ  86025 |
| 9 | |
| 10 | Road Machinery<br>716 S. 7th St.<br>Phoenix, AZ  85034 |
| 11 | |
| 12 | Squire Sanders & Dempsey LLC<br>PO Box 643051<br>Cincinnati, OH  45264 |
| 13 | |
| 14 | Sun Machinery Co.<br>PO Box 789<br>Lexington, SC  29071 |
| 15 | |
| 16 | Thornton Farish, Inc.<br>3500 Eastern Blvd., Ste. 210<br>Montgomery, AL  36116 |
| 17 | |
| 18 | URS Corporation<br>PO Box 116183<br>Atlanta, GA  30368 |
| 19 | |
| 20 | US Premium Finance<br>PO Box 924647<br>Norcross, GA  30010 |
| 21 | |
| 22 | |
| 23 | /s/Kathleen Arnold |