REAVES LAW GROUP
A PROFESSIONAL CORPORATION
2999 North 44th Street, Suite 600
Phoenix, Arizona 85018
Telephone (602) 241-0101
Facsimile (602) 241-0114

David M. Reaves, Receiver
State Bar No. 011677

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>SNOWFLAKE WHITE MOUNTAIN POWER, LLC,<br><br>Debtor. | Proceedings Under Chapter 11<br><br>Case No. 2:10-bk-21604-CGC<br><br>RECEIVER'S MOTION TO (1) ESTABLISH SALE PROCEDURES, (2) APPROVE TERMINATION PAYMENT AND (3) SET A FINAL SALE HEARING<br><br>Date: not yet set<br>Time:<br>Location: 230 N. First Ave.<br>  6th Floor, Courtroom 601<br>  Phoenix, AZ 8500 |

      David M. Reaves, in his capacity as Receiver (the "**Receiver**") and authorized representative of Snowflake White Mountain Power, LLC (the "**Debtor**" or the "**Company**") files this "Receiver's Motion To (1) Establish Sale Procedures, (2) Approve Termination Payment, and (3) Set a Final Sale Hearing" (the "**Motion**") in connection with the "Receiver's Motion For Authority To Sell Substantially All Of The Debtor's Assets As A Going Concern And To Assume And Assign or Reject Certain Executory Contracts And Unexpired Leases Related Thereto" (the "**Sale Motion**")[1] filed concurrently herewith. The Receiver seeks entry of an order approving the following bidding procedures, including the Termination Payment defined

---

[1] Capitalized terms not defined herein shall have meanings ascribed to them in the Agreement.

below, in order to effectuate (i) the sale of substantially all of the Debtor's assets, as more fully described in the Sale Motion (the "**Purchased Assets**"), free and clear of interests and claim (the "**Sale**"); and (ii) the assumption and assignment or rejection, as applicable, of certain executory contracts and unexpired leases, including all permits relating to the Business to the extent transferable, (the "**Purchased Contracts**") to Snowflake Power, LLC or its designee or designees (the "**Purchaser**"). In support thereof, the Receiver shows as follows:

## I. JURISDICTION

1. 28 U.S.C. §§157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409..

## II. BACKGROUND

2. The Debtor operates a 24-megawatt (nameplate) biomass-fired power plant (the "**Plant**") located in Snowflake, Arizona (the "**Business**").

3. The Receiver was appointed by the Superior Court of the State of Arizona (the "**Receivership Court**"), in case number CV2010-010974 (the "**Receivership Case**") over certain assets of the Debtor and other parties (as further defined in the Receivership Order, the "**Property**"), pursuant to an order entered by the Receivership Court on April 7, 2010. ("**Receivership Order**").

4. On July 9, 2010 (the "**Petition Date**"), the Receiver filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States District Court, District of Arizona (the "**Bankruptcy Court**") on behalf of Snowflake White Mountain Power, LLC, commencing Bankruptcy Case No. 2:10-21694-CGC (the "**Bankruptcy Case**").

5. On July 13, 2010, the Bankruptcy Court granted "CoBank's Motion to Excuse Turnover of the Receiver" on an interim basis ("**Excuse Order**"), authorizing the Receiver to continue to operate, possess, and control the Property pending further order of the Bankruptcy Court.

6. Pursuant to the Receivership Order and the Excuse Order, the Receiver is

authorized to sell or otherwise dispose of the Property.

7. Pursuant to the Excuse Order, the Receiver manages the affairs of the Debtor's estate and exercises all of the rights and powers of a trustee serving in a case under chapter 11 of the Bankruptcy Code in accordance with 11 U.S.C. § 1107. Among those rights and powers are (i) the right and power to sell property of the Debtor's estate out of the ordinary course of business, free and clear of liens and interests; and (ii) the right and power to assume and assign or reject unexpired leases and executory contracts, subject to approval by this Court after appropriate notice and an opportunity for a hearing. *See* 11 U.S.C. §§ 363(b), 363(f), 365(a), 365(f) and 1107.

8. The Receiver has engaged Ewing Bemis & Co. Investment Bankers ("**EB&Co**") as a broker to continue to market the Property. The engagement of EB&Co was approved by the Court by order entered on August 9, 2010. Prior to the Petition Date, EB&Co had undertaken significant effort to market the Plant and the Business, including the compilation of an offering book, solicitation of initial bids, and assisting potential purchasers in completing their due diligence, among other things. EB&Co has continued these efforts after its engagement by the Receiver in this Bankruptcy Case.

9. After initial negotiation by EB&Co with several parties, the Receiver entered into that certain Asset Purchase Agreement dated as of September 8, 2010 (the "**Agreement**") with the Purchaser to sell the Purchased Assets[2] for $4,750,000 (the "**Sale Price**").

10. Concurrently with this Motion, the Receiver has filed the Sale Motion requesting approval of the Agreement and authorization to conduct a sale of the Purchased Assets.

### III. RELIEF REQUESTED

11. By this Motion, the Receiver requests that the Court approve the Sale Procedures

---

[2] The Purchased Assets constitute substantially all of the assets of the Debtor, and are part of the Property. The remainder of the Property under the control of the Receiver is owned by non-Debtor entities, and remains under the control of the Receivership Court.

attached as Exhibit "C" to the Agreement (the "**Sale Procedures**"), and attached hereto as Exhibit "1."

12. The Receiver also requests that the Court set a hearing on the Sale Motion during the week of September 27, 2010 (the "**Sale Hearing**").

13. Finally, the Receiver requests that the Court approve the Receiver's agreement that the Debtor pay the Purchaser $250,000 to cover its due diligence costs and expenses (the "**Termination Payment**") in the event that the Purchaser is not the successful bidder at the Sale Hearing, and under certain other circumstances set forth in Section 8.1(d) of the Agreement[3]. Other bidders shall not be reimbursed for their due diligence costs and expenses in any amount.

14. The Sale Procedures include the following:

    a. Interested parties must qualify to conduct due diligence on the Purchased Assets by executing a confidentiality agreement and providing evidence of their financial wherewithal to close the sale transaction.

    b. Parties who wish to bid on the Purchased Assets must submit a $500,000 good faith deposit, written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Receiver with appropriate contact information for such financing sources, and a blackline of the Agreement showing proposed revisions to the Agreement

---

[3] Section 8.1 (d) of the Agreement provides:
> In the event that (i) (A) Buyer is not the successful bidder in the sale of the Business conducted pursuant to Bankruptcy Rule 363 or (B) the Bankruptcy Court requires a modification of the Sale Procedures or the Requested Form of Sale Order that is materially adverse to Buyer and as to which Buyer does not consent, and (ii) the Business is sold to another Person who is a Qualified Bidder at the Auction (as those terms are defined in the Sale Procedures), then in addition to the return of the Deposit Amount, upon consummation of such alternative sale the Company shall pay to Buyer an amount equal to Two Hundred Fifty Thousand Dollars ($250,000.00) to reimburse Buyer for its costs and expenses in connection with this transaction. In addition, the Company shall pay Buyer the Two Hundred Fifty Thousand Dollar payment described in the previous sentence in the event that Buyer terminates this Agreement under Section 3.2(c) due to a breach by the Receiver; provided that the payment shall be made contemporaneously with the sale of the Business to the buyer designated at the Auction, and if there is no sale of the Business to the buyer designated at the Auction, contemporaneously with and from the first proceeds received from any sale of the Business or the Company's assets that occurs within two (2) years following the date of termination of this Agreement.

at least three business days prior to the Sale Hearing.

    c. If more than one party qualifies to bid on the Purchased Assets, the Court shall conduct an auction (the "**Auction**") at the Sale Hearing, at which the initial bid shall be the Sale Price by the Purchaser, and subsequent bids shall be increased by the amount of at least $500,000 per bid.

15. All interested parties are encouraged to review the Sale Procedures attached hereto as Exhibit "1" for a complete description of the procedures to be approved hereby and which will govern the Auction. The foregoing is intended as a summary and the Sale Procedures will govern in the event of any inconsistency.

### IV.     SUPPORT FOR RELIEF REQUESTED

**A.    Termination Payment and Sale Procedures**

16. The Termination Payment and the Sale Procedures, the Receiver submits, are fair and reasonable and are calculated to promote a fair sale process, stimulate bidding and, at the same time, ensure that the Purchaser is appropriately compensated for serving as a "stalking horse" whose bid will be subject to higher or better offers. The Receiver believes that the Termination Payment and the Sale Procedures are reasonable, given the benefits to the estate of having a definitive Agreement and the risk to the Purchaser that a third-party offer ultimately may be accepted, and are also necessary to preserve and enhance the value of the Debtor's estate.

17. Bidding incentives encourage a potential purchaser to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process. Historically, bankruptcy courts have approved bidding incentives similar to the Termination Payment under the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. See, e.g., In re 995 Fifth Ave. Associates, L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is

undertaking") (citation omitted; <u>In re Marrose Corp</u>., Nos. 89 B 12171-12179 (CE), 1992 WL 33348 at *5 (Bankr. S.D.N.Y. 1992) ("[bidding incentives] are meant to compensate the potential acquiror who serves as a catalyst or 'stalking horse' which attracts more favorable offers"). <u>See also</u> <u>In re Integrated Resources,</u> 147 B.R. 650, 657-58 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (establishing three basic factors for determining whether to permit such fees in bankruptcy: whether (1) relationship of parties who negotiated break-up fee is tainted by self-dealing or manipulation; (2) whether fee hampers, rather than encourages, bidding; and (3) amount of fee is unreasonable relative to purchase price).

18. The Termination Payment and the Sale Procedures are the product of extended good faith, arm's-length negotiations between the Receiver and the Purchaser. They are fair and reasonable in amount, particularly in view of the Purchaser's efforts to date and the risk to the Purchaser of being used as a "stalking horse."

19. The Purchaser's offer contained in the Agreement, which was formulated only after an all-inclusive due diligence review of the Purchased Assets and their value, provides a minimum bid on which other bidders can rely, thereby increasing the likelihood that the Sale Price will reflect the true worth of the Purchased Assets. Finally, the mere existence of the Sale Procedures permits the Receiver to insist that competing bids for the Purchased Assets be materially higher or otherwise better than that offered by Purchaser, a clear benefit to the Debtor's estate.

20. In sum, the Receiver's ability to offer, on behalf of the Debtor, the Termination Payment and the Sale Procedures ensures the sale of the Purchased Assets to a contractually-committed bidder at a price he believes to be fair while, at the same time, providing the potential of even greater benefit to the estate. Thus, the Termination Payment and the Sale Procedures should be approved.

**B.** **<u>Sale Hearing Date</u>**

21. The Receiver has requested that the Sale Hearing be set during the week of

September 27, 2010, a date that will be between 18 and 22 days after the filing of the Motion. A sale on this time schedule is justified for two reasons.

22. First, the Business requires an investment of time and money to build inventory in the very near future, or it will be forced to close. The Debtor operates a biomass-fired power plant. It is necessary to stockpile inventory during the fall to fuel the winter operations. The Debtor does not have the resources to build up the necessary inventory. Therefore, unless a sale closes quickly, there will not be sufficient inventory build-up in the fall to fuel the winter operations. The Business will shut down and the Property will become essentially worthless.

23. Second, EB&Co has been extensively marketing the Property for several months, and informs the Receiver that it believes that all potential purchasers have been identified at this time. Each potential purchaser was informed some time ago that any sale must close during the week of September 27, 2010. Therefore, setting the Sale Hearing on only a few weeks' notice will not prejudice the Debtor's estate by chilling any potential bidding. Potential bidders have long known that they need to be prepared to close a sale by the end of September.

## V. NOTICE

24. The Receiver has provided notice of the Motion to (1) United States Trustee; (2) the Official Service List maintained in this case; (3) all parties who had previously expressed an interest in the assets comprising the business; (4) all parties who hold a lien of record in and to the Purchased Assets; and (5) all non-debtor parties to the Purchased Contracts.

**WHEREFORE** the Receiver respectfully requests entry of an order

(1) approving the Sale Procedures;

(2) authorizing the Termination Payment; and

(3) setting a Sale Hearing during the week of September 27, 2010

DATED this 10th day of September, 2010.

                        REAVES LAW GROUP


By:/s/ David M. Reaves – 011677
David M. Reaves
2999 North 44th Street, Suite 600
Phoenix, Arizona 85018
Receiver

COPY of the foregoing mailed or e-mailed
this 10th day of September, 2010, to:

SNOWFLAKE WHITE MOUNTAIN POWER, LLC
c/o CT Corporation System
2394 E. Camelback Rd.
Phoenix, AZ 85016

| | |
|---|---|
| Donald L. Gaffney | dgaffney@swlaw.com |
| Lori A. Lewis | llewis@swlaw.com |
| Benjamin W. Reeves | breeves@swlaw.com |

SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Attorneys for CoBank, ACB

| | |
|---|---|
| Carolyn J. Johnsen | cjjohnsen@jsslaw.com |
| Kerry A. Hodges | khodges@jsslaw.com |

JENNINGS, STROUSS & SALMON, P.L.C.
One E. Washington St., Ste. 1900
Phoenix, AZ 85004-2385

J. Matthew Derstine     mderstine@rdp-law.com
Roshka, DeWulf & Patten
One Arizona Center
400 E. Van Buren, Ste. 800
Phoenix, AZ 85004-2262

Steven B. Richardson     Steve.Richardson@hro.com
Holme Roberts & Owen LLP
1700 Lincoln St., Ste. 4100
Denver, CO 80203

| | |
|---|---|
| Gerald Shelley | gshelley@fclaw.com |
| Jimmy F. Dahu | jdahu@fclaw.com |

Fennemore Craig
3003 N. Central Ave., Ste. 2600
Phoenix, AZ 85012-2913

U.S. Trustee     ustpregion14.px.ecf@usdoj.gov
230 N. First Ave.
Phoenix, AZ 85003

| | | |
|---|---|---|
| 1 | J. Gregory Lake<br>Lake & Cobb, PLC | lake@lakeandcobb.com |
| 2 | 1095 W. Rio Salado Pkwy., Ste. 206<br>Tempe, AZ  85281 | |
| 3 | Attorney for J&T Grinding, LLC,<br>Petitioning Creditor | |

Renegy Holdings, Inc.  bworsley@renegy.com
3418 N. Val Vista Dr.  bobnzlegacy@gmail.com
Mesa, AZ  85213
Fax: 480-556-5500

**20 Largest Unsecured Creditors Via U.S. Mail:**

Babcock & Wilcox Company
20 S. Van Buren Ave.
Barberton, OH 44203

Catalyst Paper (Snowflake), Inc.
PO Box 128
Snowflake, AZ  85937

Cervantes-Delgado, Inc.
PO Box 9083
Brea, CA  92822

Fastenal Co.
PO Box 1286
Winona, MN  55987

Fellon-McCord & Associates
9960 Corporate Campus Dr., Ste. 2500
Louiseville, KY  40223

General Electric International, Inc.
PO Box 643449
Pittsburgh, PA  15264

J&T Grindings, OPS, LLC
845 S. 59th Ave.
Phoenix, AZ  85043

James Cooke & Hobson, Inc.
3810 Academy Pkwy S. NE.
Albuquerque, NM  87109

Mendardi, LLC
PO Box 536833
Atlanta, GA  30353

| | |
|---|---|
| 1 | Nalco Company<br>PO Box 730005 |
| 2 | Dallas, TX  75373 |
| 3 | Praxair Distributing Inc.<br>PO Box 120812 |
| 4 | Dept. 0812<br>Dallas, TX  75312 |
| 5 | |
| 6 | Process Equipment<br>PO Box 1607<br>Pelham, AL  35124 |
| 7 | |
| 8 | Rio Puerco Construction Inc.<br>PO Box 637<br>Holbrook, AZ  86025 |
| 9 | |
| 10 | Road Machinery<br>716 S. 7th St.<br>Phoenix, AZ  85034 |
| 11 | |
| 12 | Squire Sanders & Dempsey LLC<br>PO Box 643051<br>Cincinnati, OH  45264 |
| 13 | |
| 14 | Sun Machinery Co.<br>PO Box 789<br>Lexington, SC  29071 |
| 15 | |
| 16 | Thornton Farish, Inc.<br>3500 Eastern Blvd., Ste. 210<br>Montgomery, AL  36116 |
| 17 | |
| 18 | URS Corporation<br>PO Box 116183<br>Atlanta, GA  30368 |
| 19 | |
| 20 | US Premium Finance<br>PO Box 924647<br>Norcross, GA  30010 |
| 21 | |
| 22 | /s/Kathleen Arnold |
| 23 | |
| 24 | |
| 25 | |
| 26 | |